On March 14, 1997, Ricky Lee Puckett entered pleas of guilty as charged to counts of attempted murder (Count I), aggravated arson (County II), kidnapping (Count III), and felonious assault (Count IV). In return for his guilty pleas, the State agreed to recommend six year sentences on each count, with concurrent sentences on Counts I and II and concurrent sentences on Counts III and IV, with the concurrent sentences on Counts I and II to be served consecutively with the concurrent sentences on Counts III and IV, for an aggregate sentence of 12 years. By judgment entry of the same date, the trial court accepted the pleas of guilty, ordered a presentence investigation and report, and scheduled final disposition for April 23, 1997, at 10:15 a.m.
The case came on for sentencing at 10:53 a.m. on April 23, at which time Puckett requested a one hour continuance to enable the complainant, Joyce Adkins, to appear and speak on his behalf prior to pronouncement of sentence. The trial court overruled the request and proceeded to impose the sentence recommended by the State as described above.
Puckett appeals, advancing three assignments of error, the first two relating to the trial court's denial of the above described request for additional time before pronouncement of sentence.
I. APPELLANT'S FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO PERMIT THE VICTIM OF THE INSTANT CRIME TO MAKE A STATEMENT AS MANDATED BY O.R.C. 2930.14(A)(B).
R.C. 2930.14 states in pertinent part:
 (A) Before imposing sentence upon a defendant for the commission of a crime, the court shall permit the victim of the crime to make a statement.
 (B) The court shall consider a victim's statement made under division (A) of this section along with other factors that the court is required to consider in imposing sentence.
In denying the request for additional time before pronouncement of sentence, the trial court stated:
 Well, I think that the Court is willing to assume that in the event that the Defense would be interested in bringing the complaining witness in, the victim in this case, it would be something that would be good that the complaining witness would wish to say at this time, so I will assume that and conduct the Court's actions accordingly, but really there is nothing that the complaining witness could say that would make any difference in what the Court's decision is in this matter.
* * *
 I think I have made a record of how I feel about the whole thing. I'm willing, you know, I'm willing to say she would say something good. Even if she would recant something and say it wasn't all true at this point in time, with all the processing that has been done and all the information the Court has, that wouldn't make any difference on what is going to happen at this time.
R.C. 2930.14(B) requires the trial court to consider the victim's statement. Thus, the trial court's statement that the victim's statement would have no effect on the proceedings would be, standing alone, indicative of a troubling closedmindedness. On the other hand, the statute does not require the trial court to ascribe any particular weight to the victim's statement and, on the record before this court, we find that Puckett suffered no prejudice from the trial court's attitude.
It cannot be said, as asserted in the assignment of error, that the trial court failed to permit the victim to make a statement. It is clear that the victim was not present when the case was called for disposition on April 23, 38 minutes after 10:15 a.m., the scheduled time for sentencing, on the sentencing date that had been scheduled more than five weeks earlier, on March 14. Nothing suggests that the trial court would have refused to allow the victim to speak had she been present in court. Thus, the question before us boils down to whether the trial court abused its discretion in denying additional time before pronouncing sentence. Upon consideration of the entire record, we conclude that it did not.
First, the trial court only had Puckett's word that the victim would speak favorably on his behalf. Although his counsel requested a brief delay so he could arrange transportation to the court for the victim, counsel himself was not certain that the victim was willing to speak on Puckett's behalf.
Second, the trial court was willing to assume the victim's statement would be favorable to Puckett. Again, while we find the trial court's above quoted remarks troubling, we nevertheless think, after our examination of the record, that the trial court would have been well within its discretion in discounting a statement by the victim which might have been favorable to Puckett, particularly as it might have related to the offenses to which Puckett had pleaded guilty. The presentence report, which the trial court stated it had reviewed, and which we have made part of the record, reveals that Puckett and the victim had lived together for about nine months in a turbulent relationship. The particulars of the four charges to which Puckett pleaded guilty are disclosed in the plea proceedings of March 14:
 MR. MESAROS (Prosecutor): Your Honor, the State of Ohio has alleged and is prepared to prove that on November the 22nd, 1996, within Greene County, Ohio, specifically in the City of Fairborn, that the Defendant, Ricky L. Puckett, did purposely and with sufficient culpability for the commission of the offense of murder, engage in conduct that if he had been successful, would have constituted or resulted in the offense of murder.
 Specifically the operative facts to Count I are that the Defendant, over the course of several hours, beat repeatedly the victim, Joyce Adkins, with his fists about her face and head area, causing substantial injury, and, in fact, left behind a note that indicated his intent to cause her death as he threatened her throughout this ordeal. Had he been successful, this offense would have, in fact, constituted the crime of murder.
 This is all in violation of Section 2923.02(A) and 2903.02(A) of the Revised Code. The official title of the offense is called Attempted Murder, a felony of the first degree.
 As to Count II of the Indictment, the State of Ohio alleges further that on or about November the 22nd, 1996, within Greene County, specifically the City of Fairborn, the Defendant did, by means of fire, knowingly create a substantial risk of serious physical harm to another.
 The operative facts for Count II being that at the same time and place as alleged in Count I, the Defendant had a can of hair spray and he took a lighter and would light the stream of aerosol from the can, attempting to ignite the person of Joyce Adkins after he would douse her and a towel she held in self-defense with lighter fluid.
 The title of his offense is Aggravated Arson. It's a felony of the first degree, and this is in violation of Section 2909.02(A)(1) of the Revised Code.
 As to Count III of the Indictment, the State of Ohio alleges that on or about November the 22nd, 1996, within Greene County, the Defendant, Ricky Puckett, did, by force, threat or deception, or by any means, remove another from the place where she was found, or in this case, restrained her of her liberty in order to terrorize or inflict serious physical harm on that person.
 The operative facts for this count are that at the same time and location as Counts I and II, beginning at approximately 8:00 p.m. on November the 22nd and lasting until approximately noon on November the 23rd, the Defendant restrained Joyce Adkins of her liberty within a trailer at the location in Fairborn where she was unable to flee because of his threats and physical compulsion, and during that time he continued to beat and assault her during that time period. This is in violation of Section 2905.02(A)(3). The offense is Kidnapping, a felony of the first degree.
 And, lastly, as to Count IV of the Indictment, the State of Ohio alleges that on or about November the 22nd, 1996, within Greene County, again, at the same time and location as the other three counts, the Defendant did knowingly cause serious physical harm to another person. In this case the State alleges that Joyce Adkins is that other person, and that the Defendant did, as a result of multiple beatings and assaults with his fists, feet and with a telephone receiver, did beat her about the face and head causing serious physical harm as defined in Ohio Revised Code. This is all in violation of Section 2903.11(A)(1). The offense is entitled Felonious Assault, a felony of the second degree.
 THE COURT: Mr. Puckett, were you able to hear the Prosecutor's statement?
THE DEFENDANT: Yes.
 THE COURT: Do you understand that he has described each of the four offenses that you would be pleading guilty to under the plea agreement?
THE DEFENDANT: Yes.
 THE COURT: And his description that he made in the statement, is that what happened?
THE DEFENDANT: Yeah.
The nature of the victim's injuries were verified by the deposition testimony, filed March 14, 1997, of Michael Stevens, M.D., the emergency medicine physician who treated the victim, who testified in part:
 Q. Based on your experience and training, to a reasonable degree of medical certainty, based on your evaluation of that patient, do you have an opinion as to whether or not the physical harm suffered by Ms. Adkins carried a substantial risk of death?
 A. I think that the answer to that question would be, yes, because of the fact that the brain can be injured. Any time you have blunt trauma of this degree of severity to cause these types of injuries, which we can see in these pictures, I would be concerned that there might be brain injury.
Given Puckett's acknowledgment of the particulars as the State described them, and the expert verification of the victim's injuries, the trial court would have been well within its discretion in viewing a favorable statement by the victim with skepticism, especially if it involved recanting her prior statement to the police, which was described in the "official version of offense", which was part of the presentence report.
Third, the trial court imposed the sentence recommended by the State in return for Puckett's pleas of guilty.
Finally, it is pure speculation, rather than a reasonable inference from the record, that R.C. 2930.14, providing for an opportunity for the victim to speak prior to sentencing, influenced Puckett's decision to plead guilty.
The first assignment is overruled.
II. APPELLANT'S SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT VIOLATED 2929.111 O.R.C. AND 2929.12
O.R.C., ID EST, BY FAILING TO PERMIT THE VICTIM TO MAKE A STATEMENT AT THE TIME OF SENTENCING.
R.C. 2929.11(A)(B) and R.C. 2929.12(B)(2) provide respectively:
 (A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
 (B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.
* * *
 (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
Puckett contends under this assignment of error that the trial court denied him his right under these statutes to have the victim appear on his behalf to mitigate the seriousness of his crimes.
We reiterate what we said in connection with the first assignment: the victim failed to appear at the time previously scheduled for sentencing. It was not, for reasons previously stated, an abuse of discretion for the court to pronounce sentence without having first heard from her. Puckett is correct that the presentence report contains no victim impact statement, and that the court thus had no "input" from the victim before pronouncing sentence. The presentence report details the extensive, unsuccessful efforts made to obtain information from the victim.
Again, we find no abuse of discretion or violation of the above quoted provisions in the trial court's proceeding to sentence without first hearing from the victim.
First, the provisions relied upon under this assignment do not require the trial court to either allow the victim to speak or have a victim impact statement prior to sentencing. These provisions provide that a trial court imposing a felony sentence not demean the seriousness of the offender's conduct and its impact on the victim — R.C. 2929.11(B) — and consider, as indicating that the offender's conduct is more serious than conduct normally constituting the offense, that the victim suffered serious physical harm — R.C. 2929.12(B)(2). Given Puckett's acknowledgment of the particulars of the offense as recited by the prosecutor on March 14 when he entered his guilty pleas, the official version of the offense contained in the presentence report, and Dr. Meadow's deposition testimony, we conclude that the trial court was in a position to discharge its responsibilities under R.C. 2929.11 and 2929.12, even though it had no victim input. Given what we have learned from the record, we conclude that the trial court would have properly viewed with skepticism Puckett's reason at sentencing for the victim's failure to communicate with the presentence investigator: that the victim knew she would get in trouble if she changed her story. Furthermore, we reiterate that, based on this record, the trial court would have properly discounted any retraction by the victim. Finally, we think it highly unlikely, as well as unsupported by the record, that when he entered guilty pleas in return for a recommendation of a twelve year sentence, Puckett expected a lesser sentence on account of a favorable statement on his behalf from the victim at sentencing.
The second assignment is overruled.
III. APPELLANT'S THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ENTERING A FINDING OF GUILTY IN THE INSTANT CASE, WHERE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT A CRUCIAL STAGE OF THE PROCEEDING.
In this assignment of error, Puckett contends that the four offenses to which he pleaded guilty are allied offenses of similar import under R.C. 2941.25, and that his counsel was ineffective in permitting him to plead guilty to more than one offense.
In State v. Blankenship (1988), 38 Ohio St.3d 116, the court stated at 117:
 This court has set forth a two-tiered test to determine whether two crimes with which a defendant is charged are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
Applying the Blankenship analysis to the charges in this case, and the particular facts of each charge, as detailed by the State March 14, we conclude that attempted murder and felonious assault are allied offenses of similar import committed with a single animus and that, of those two offenses, Puckett should only have been convicted of attempted murder. The commission of attempted murder did not result in the commission of aggravated arson or kidnapping or vice versa. Nor did the commission of either aggravated arson or kidnapping result in the commission of the other offense. The sixteen hour period of restraint made the kidnapping offense more than merely incidental to the offenses of attempted murder and aggravated arson. See State v. Brown (1984),12 Ohio St.3d 147, 150.
We decline to find counsel ineffective because Puckett's pleading to all four charges may have been demanded in return for the recommended sentence of 12 years. Puckett could have been sentenced to 30 years for attempted murder, aggravated arson, and kidnapping. In any event, Puckett was not, in terms of time to be served, prejudiced by counsel's permitting him to plead to felonious assault, the only second degree felony charged, because the sentence for felonious assault was recommended to run concurrently with the sentence for kidnapping.
We have, however, held that it is plain error to convict on an allied offense of similar import committed with the same animus as the other offense. Accordingly, we will vacate the conviction and sentence for felonious assault.
The assignment of error is sustained in part and overruled in part.
The conviction and sentence for felonious assault will be reversed and vacated. In all other respects, the judgment will be affirmed.
YOUNG, P.J. and BROGAN, J., concur.
Copies mailed to:
Robert K. Hendrix
J. Allen Wilmes
Hon. M. David Reid